IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PAUL PATRICK SERDULA, | * | CIVIL ACTION NO. |
| GDC# 100702570, | * | 1:25-CV-7150-ELR-JSA |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | HABEAS CORPUS |
| ERIC COX, Warden, | * | 28 U.S.C. § 2254 |
| | * | |
| Respondent. | * | |

BRIEF IN SUPPORT OF ANSWER-RESPONSE

## I. PROCEDURAL HISTORY

Petitioner was indicted by a Cobb County grand jury on February 18, 2010, for fifteen counts of unlawful surveillance (counts 1-5, 7, 9, 11, 13, 15, 17, 19, 22, 24, 27), one count of child molestation (count 6), nine counts of aggravated sodomy (counts 8, 10, 12, 14, 16, 18, 20, 23, 25), one count of sexual assault against a person in custody (count 21), and one count of aggravated child molestation (count 26). (Resp. Ex. 20, pp. 11-24).[1] On December 16, 2010, Petitioner was indicted by another Cobb County grand jury for four more counts of unlawful surveillance (counts 1, 2, 3, 5), two more counts of aggravated sodomy (counts 4, 6), and one more count of

_____

[1] Respondent will use the page number as reflected in Adobe Viewer (i.e., the page number of the document), as some exhibits contain multiple, different page numbers.

sexual assault against a person in custody (count 7). (Resp. Ex. 20, pp. 11-24).

Several relevant events occurred pre-trial. First, the indictments were joined. (Resp. Ex. 22, p. 115). Secondly, Petitioner, through his trial counsel, Jimmy D. Berry ("trial counsel" or "Berry")[2], moved to suppress digital evidence found on Petitioner's phone, and moved to have the trial judge, Judge Reuben Green, recused based on a "close relationship" with the then Cobb County District Attorney, Pat Head. (Resp. Ex. 21, p. 117; Resp. Ex. 22, p. 366-69). Both motions were denied after hearings. (Resp. Ex. 20, p. 148; Resp. Ex. 21, p. 117; Resp. Ex. 22, p. 354, 470).

Petitioner was tried at a stipulated bench trial on April 11, 2011, before Judge Green. (Resp. Ex. 21, p. 230). At his bench trial, Petitioner acknowledged his understanding and agreement to the Stipulation of Facts, detailing the factual stipulations surrounding all charges. *Id.* at 235-41, 257. Petitioner conceded that the stipulated facts supported all charges. *Id.* at 242. Petitioner reserved the right to challenge the denial of his motion to suppress and his motion for recusal.[3] *Id.* The trial court found Petitioner

---

[2] Given the number of attorneys involved in Petitioner's case, particularly at the appellate stage, attorneys will be referred to by last name for clarity.
[3] After consultation with Petitioner, a stipulated bench trial was pursued in lieu of a guilty plea in order to preserve the suppression issue, and because Petitioner did not want to have the victims testify. (Resp. Ex. 24, p. 327-28). Once the motion to suppress was denied and all the data from Petitioner's

guilty as to all counts on both indictments.  *Id.* at 253; (Resp. Ex. 20, p.361).

The trial court held a sentencing hearing on November 18, 2011, at which numerous witnesses testified for both the State and defense.  (Resp. Ex. 21, p. 283-450).  At the conclusion of the hearing, the trial court sentenced Petitioner as follows: As to the February 2010 indictment, Petitioner was sentenced to concurrent terms of five (5) years to serve for each count of unlawful surveillance, sexual assault against a person in custody, and child molestation; a concurrent term of life for each count of aggravated sodomy; and a consecutive life sentence for aggravated child molestation, with the first twenty-five (25) years to be served in confinement.  *Id.* at 449-50; (Resp. Ex. 20, pp. 191-94).  On the December 2010 indictment, Petitioner was sentenced to concurrent terms of five (5) years for each count of unlawful surveillance and sexual assault against a person in custody, and concurrent life terms for each count of aggravated sodomy.  *Id.* at 449-50; (Resp. Ex. 20, pp. 380-81).  For all thirty-four counts, the total sentence imposed was life plus twenty-five years.[4]  *Id.*

Petitioner filed a timely motion for new trial through Berry, which

---

phone depicting the crimes was admissible, trial counsel acknowledged there were no other defenses.  *Id.*

[4] Among other considerations, the trial court "considered the fact that [Petitioner] waived his right to a jury trial… thereby relieving the victims of having to come take the witness stand… and that's a big thing as far as mitigation."  (Resp. Ex. 21, p. 447).

was amended by Mitch Durham on June 18, 2014. (Resp. Ex. 23, pp. 175-83). Following a September 26, 2014, hearing at which Petitioner was still represented by Durham, the trial court denied the motion for new trial as amended on September 30, 2014. (Resp. Ex. 22, p. 195-97). Durham filed a notice of appeal on October 28, 2014. *Id.* at 199. Justin Wyatt entered a substitution of counsel on December 15, 2015. *Id.* at 262. Nathanael Horsley filed a substitution of counsel on August 31, 2016. *Id.* at 271. Petitioner's appeal was docketed in the Georgia Court of Appeals on March 30, 2017. *Id.* at 286.

Through Horsley, Petitioner enumerated the following issues in his initial direct appeal:

(1) The trial court erred in denying the motion to recuse;

(2) The trial court erred in convicting Petitioner of aggravated sodomy, because the evidence was insufficient;

(3) The trial court erred in denying Petitioner's motion to suppress; and,

(4) Trial counsel was ineffective in his representation of Petitioner, specifically in failing to argue that Petitioner suffered from a delusional compulsion that rendered him incompetent for trial.

(Resp. Ex. 1, p. 8).

The Georgia Court of Appeals found that the trial court erred in its premature denial of the motion to recuse and vacated Petitioner's convictions and remanded for further proceedings. *Serdula v. State,* 344 Ga.

4

App. 587 (2018) ("*Serdula I*"). (Resp. Ex. 2).  Specifically, the appellate court

found that the trial court erred in its disposition of the motion because it

had an independent duty to address the recusal and make disclosures based

on the judge's personal knowledge of Head's position in his judicial

campaign. *Serdula I* at 590.  The appellate court disagreed with the trial

court's decision that an evidentiary hearing was unnecessary and with the

trial court's denial of Petitioner's request to refer the recusal motion to

another judge.  *Id.* at 588.  The appellate court questioned, as an initial

matter, whether the averment of a "close relationship" between Judge Green

and District Attorney Head would have required assignment to another

judge, because the claim lacked objective facts regarding the relationship.

*Id.* at 588 (I).  Nevertheless, the appellate court found that, because due

process requires that all parties have the right to an impartial judge and a

fair trial, even if the facts in an affidavit are insufficient, a judge still

maintains an ethical duty of self-recusal when he is aware of grounds to

justify such recusal.  *Id.* at 590 (I).

The appellate court further found that the trial judge's impartiality

"might" reasonably be questioned and that the trial judge should have

referred the matter to another judge.  *Serdula I* at 591(I).  Based on the lack

of a record concerning the extent, timing, and nature of the relationship

between the judge and District Attorney, the appellate court vacated

Petitioner's convictions and the order denying the recusal motion and remanded the matter with direction to reassign it to another judge. *Id.* at 592. The appellate court ordered that if the reassigned judge denied the motion to recuse, the matter would be reassigned back to Judge Green, and the convictions should be re-entered. *Id.* If the recusal motion was granted, the case would be reassigned, and Petitioner's criminal case would begin anew. *Id.* Based on this ruling, the appellate court declined to address Petitioner's remaining enumerations of error. *Serdula I* at 592 (2).

The appellate court did, however, address certain requests made in Petitioner's motions for remand. The appellate court found that Petitioner was not entitled to a remand to pursue an ineffectiveness claim based on trial counsel's handling of the motion to recuse. *Serdula I* at 592-93 (3)(a). Though prior appellate counsel raised ineffectiveness claims, he did not raise any concerning trial counsel's performance in presenting the recusal motion. *Id.* Thus, the issue was waived, and Petitioner was not entitled to a hearing to develop the issue. *Id.* The appellate court also noted that Petitioner had requested an evidentiary hearing concerning the correctness of the record of the motion for new trial hearing, specifically as to a psychological report introduced into evidence at the hearing. *Id.* at 593 (3)(b). However, the appellate court found that Petitioner was not challenging the accuracy of the record before the appellate court and that no

6

remand was necessary. *Id.* The appellate court noted that to the extent Petitioner insinuated that a different psychological report was swapped out in his absence at the hearing, both psychological reports were in the record, and the trial court heard testimony and argument about the findings in the report that Petitioner claimed was not in evidence. *Id.* at n. 6.

The appellate court next noted that Petitioner had made an unspecified claim that his previous appellate counsel was ineffective in his examination of trial counsel at the motion for new trial. *Serdula I* at 593-94 (3)(c). The appellate court found that this blanket claim alone was insufficient to justify a remand. *Id.*

Lastly, the appellate court addressed Petitioner's request to disqualify the current Cobb County District Attorney (Vic Reynolds) and his entire office, asserting that Reynolds was Berry's law partner at the time of trial. *Serdula I* at 594 (4). The appellate court found that Petitioner had not made any request for disqualification, so the appellate court declined to, in the first instance, determine whether the district attorney's disqualification was necessary. *Id.*

On remand, the entire Cobb County Superior Court Bench was recused for the purposes of the motion to recuse. (Resp. Ex. 22, p. 344). Senior Judge Larry Salmon was appointed to hear the motion in January 2019. *Id.* at 346. Following a March 22, 2019, hearing on the motion to

7

recuse, at which Petitioner was represented by Ashleigh Merchant,[5] the

motion to recuse was (again) denied on April 4, 2019. (Resp. Ex. 22, p. 354).

Merchant filed a notice of appeal on April 29, 2019. (Resp. Ex. 23, p. 4).

Through Merchant, Petitioner enumerated the following issues in his

second direct appeal:

(1) The trial court erred in denying the motion to recuse;

(2) The trial court erred in entering the State's proposed order denying Petitioner's motion to recuse without giving Petitioner an opportunity to respond to the State's erroneous proposed findings of fact;

(3) The trial court erred in denying Petitioner's motion to suppress;

(4) There was insufficient evidence to support Petitioner's aggravated sodomy convictions;

(5) The trial court erred in ruling that trial counsel was not ineffective in his representation, specifically in failing to argue that Petitioner suffered from a delusional compulsion that rendered him incompetent for trial.

(Resp. Ex. 3, p. 13). Merchant again challenged the denial of the motion to

recuse (challenging Judge Salmon's order, instead of the previously

challenged order entered by Judge Green) and added the second

enumeration of error. *Id.* The remaining three enumerations were

previously raised by Horsley but were not addressed by the appellate court

---

[5] It is unclear when Merchant entered the case, but Horsley moved to withdraw on May 22, 2018, several months after *Serdula I* was decided. (Resp. Ex. 22, p. 322).

given the remand.  (Resp. Ex. 1, p. 8).

On June 18, 2020, the Georgia Court of Appeals affirmed Petitioner's convictions in *Serdula v. State,* 356 Ga. App. 94 (2020) ("*Serdula II*"). (Resp. Ex. 4). The appellate court sua sponte found that the evidence, specifically the stipulated facts, was sufficient to support all his convictions.  *Id.* at n.1.

The appellate court next found no error from the second denial of Petitioner's motion to recuse.  *Id.* at 97 (1).  The appellate court outlined the evidence presented at the recusal hearing, which primarily consisted of former District Attorney Head's testimony.  *Id.* 99 (1).  In essence, though Head was named Green's treasurer in his short-lived campaign for state court judge[6], the evidence showed that he was treasurer in name only.  *Id.* Head testified that he had no office, did not fill out any paperwork, and essentially did no work on behalf of Green. *Id.*  In fact, Head only agreed to take the position if it did not require him to do any work.  *Id.*  at 102. Head recalled signing two campaign disclosures based on his reliance on whoever had given him the documents.  *Id.* at 100 (1).  Head's understanding was that Green wanted Head's name to show Head's support, but that Head otherwise was not involved with the campaign's finances and had little to no involvement in the campaign.  *Id.*  Head did not consider Green a "close

---

[6] Green was appointed to the Superior Court of Cobb County while his state court judicial campaign was pending.  *Serdula II* at 100.

9

friend"—they never socialized or even had lunch together—but rather a work colleague. *Id.* The appellate court noted that the trial court (Salmon), sitting as the factfinder, had determined there was "not a close relationship" between Green and Head. *Id.* at 102-03. The appellate court found that the trial court's determination that the evidence developed at the hearing "dissipated the appearance of partiality" was not clearly erroneous, as it was supported by Head's testimony. *Id.* at 103.

As to Petitioner's contention that exhibits—purportedly containing campaign-disclosure statements with Head's signature that "conclusively establish[ed] that Head served a significant role in Green's campaign"— presented at the recusal hearing proved that recusal was warranted, the appellate court found this argument was a "nonstarter." *Serdula II* at 103. This was so because the referenced exhibits were not included in the record, so the appellate court could not confirm the contents.[7] *Id.* The appellate court went on to find, notwithstanding, that Head *admitted* he served as treasurer for the state campaign and that he signed at least two campaign disclosures. *Id.* Thus, even assuming Petitioner accurately described the exhibits, the appellate court found that the trial court must have credited

---

[7] Merchant filed a motion to supplement the record shortly after *Serdula II* was decided, in addition to a motion for reconsideration, but both motions were denied. (Resp. Exs. 5-8).

10

Head's testimony that he played no significant role in the campaign, did not prepare any disclosures, and signed the disclosures only in reliance on somebody else. *Id.* The state appellate court also rebutted Petitioner's implication that the *sole* fact of Head's role as treasurer should have demanded recusal, noting that the Georgia Supreme Court in other cases involving the same issue between Green and Head had remanded for further factual development. *Id.* at 103-04. If this fact alone were sufficient to demand recusal, the Georgia Supreme Court would have remanded the case with direction that Green recuse himself—not order an evidentiary hearing for factual development to determine the extent of the relationship. *Id.* Ultimately, the state appellate court found that Judge Salmon's denial of the recusal motion and finding that Head "played no especially important role in an ongoing or recent campaign" was not an abuse of discretion. *Id.*

Next, the state appellate court addressed Petitioner's assertion that the trial court erred in entering the State's proposed order denying the recusal motion without giving him a chance to respond to purportedly erroneous findings of fact. *Serdula II* at 104 (2). In the order, the trial court found one of Petitioner's exhibits "clearly in error" that contained conflicting information about whether Judge Green was seeking state or superior court judgeship. *Id.* The state appellate court again noted that the recusal hearing exhibits were not in the record so the court must accept the trial court's

11

description as true, but that regardless, the court's description of the exhibit was consistent with Head's testimony (that he was treasure of Judge Green's state campaign and had nothing to do with his superior court seat or appointment). *Id* at 105. The state appellate court acknowledged that even when a document is admitted into evidence as a public record under O.C.G.A. § 24-8-803(8), it does not guarantee that the document is error-free or immune from scrutiny. *Id.* at 105-06. The state appellate court noted that Petitioner was essentially trying to prevent Head from explaining or clarifying inconsistencies in the campaign-disclosure report, undermining the truth-seeking process. *Id.* at 106. Ultimately, the state appellate court found that Petitioner had presented no authority that the trial court was required to accept the accuracy of the document when the record was internally inconsistent. *Id.* The state appellate court also found that the trial court lacked jurisdiction to consider Petitioner's motion for reconsideration, as Petitioner had filed a notice of appeal while the motion was still pending. *Id.* at 106-07.

The state appellate court next addressed Petitioner's contention that the trial court erred in denying his motion to suppress evidence obtained from his cell phone. *Serdula II* at 107 (3). First, the state appellate court addressed Petitioner's argument that the warrant to search his phone lacked probable cause. After outlining the relevant probable cause law, the state

appellate court recited the facts set forth in the officer's affidavit and application for the search warrant. *Id.* at 108 (3) (a). The state appellate court noted that Petitioner had admitted to owning the cell phone and placing it in the bathroom of the dental office where he was employed that morning, with the purported goal of catching suspected drug theft from other employees. *Id.* at 108-09. Such admission, which was made after Petitioner was *Mirandized*, constituted a violation of unlawful surveillance, O.C.G.A. § 16-11-62(2)[8]. *Id.* Thus, the state appellate court found a fair probability that Petitioner was using the phone to unlawfully record others in a private place, a crime. *Id.*

The state appellate court also addressed Petitioner's claim that the search warrant was issued based on false information (i.e., Off. Twiggs failed to include that the phone was turned off, and he falsely claimed it was facing the toilet). *Serdula II* at 110 (3)(a). The state appellate court found that Petitioner cited no evidence in the record to support his version of the facts, and that it was the trial court's role as the factfinder to resolve any conflicts in the evidence at the suppression hearing. *Id.* The state appellate court

---

[8] "It shall be unlawful for any person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view." O.C.G.A. § 16-11-62(2). The statute does not contemplate the reason for the surveillance.

further found that the affidavit did not have to present evidence conclusively showing that a crime had been committed, only that there was a "fair probability that contraband or evidence of a crime would be found in a particular place." *Id.* at 111. Thus, the magistrate found the officer to be credible and made a reasonable determination that the allegations created a fair probability that Petitioner had unlawfully surveilled employees in the dental office bathroom. *Id.* In conclusion as to the probable cause aspect, the appellate court found that given the substantial deference owed to a magistrate's decision to issue a search warrant, and considering the facts in the light most favorable to the trial court's decision, no abuse of discretion was found in finding sufficient probable cause to issue the search warrant for Petitioner's phone. *Id.*

The state appellate court next addressed the Fourth Amendment's particularity requirement within Petitioner's challenge to the denial of the motion to suppress, in which Petitioner argued that the warrant was overly broad. *Serdula II* at 111 (3)(b). The state appellate court outlined the Fourth Amendment particularity standard, and then noted that the warrant sought to search "a black in color LG Verizon cell phone that was collected from the pipe padding of the bathroom at 600 Galleria Pkwy Suite 800, Atlanta, Georgia 30339 to access the phone to look for information to verify the owner

of the phone, any recorded files, videos, and all phone activity logs." *Id.* at

112.

The appellate court disagreed with Petitioner's contention that the

warrant was overly broad for not specifying the removable memory card in

the phone, finding that the level of required specificity is flexible and varies

from case to case. *Id.* "Although the search warrant did not specifically

reference the memory card, a search of the phone would necessarily include

its contents, which included the memory card." *Id.* The state appellate court

also addressed Petitioner's argument that the warrant was not specific

enough with respect to the types of files to be recovered, finding it *did* specify

the types, specifically "recorded files, videos, and all phone activity logs." *Id.*

After citing to Georgia Supreme Court precedent finding the phrase

"electronic data" sufficiently specific, the state appellate court found that the

language used in this case was also sufficient. *Id.* at 113.

As to the next enumeration challenging the sufficiency of his

aggravated sodomy conviction(s), the state appellate court found this claim

lacked merit. *Serdula II* at 113 (4). Petitioner only argued that the evidence

was insufficient *had* his motion to suppress been granted, but because the

state appellate court disagreed with this premise, finding in Division 3 no

abuse of discretion in denying the motion to suppress, this argument lacked

merit. *Id.*

15

Lastly, the state appellate court addressed Petitioner's claim that trial counsel was ineffective for failing to argue that Petitioner suffered from a delusional-compulsion disorder that rendered him incompetent to stand trial. *Serdula II* at 113 (5).

The state appellate court first cited the relevant Sixth Amendment standard and then cited the standard for insanity in Georgia, including the law that a defendant is not guilty by reason of insanity if, at the time of the criminal act, he "did not have the mental capacity to distinguish between right and wrong in relation to such act or a mental disease caused a delusional compulsion that overmastered his will to resist committing the crime." *Id.* at 113-14. Citing O.C.G.A. § 16-3-3, the appellate court reiterated that a finding of insanity required proof that the defendant acted under a delusional compulsion, the crime was connected with the delusion, and the delusion related to a fact which, if true, would have justified the act. *Id.* at 114. The state appellate court noted that to prevail on an insanity defense predicated on a delusional compulsion, his mental state at the time of the crimes was relevant, not his mental state at the time of trial. *Id.* The state appellate court found that Petitioner "had not identified any specific delusion related to any particular fact which, if true, would have justified his criminal acts." *Id.* at 115.

The state appellate court noted that Petitioner had relied on a psychological report prepared by Dr. Robert Shaffer and asserted that trial counsel was ineffective for failing to present evidence of delusional compulsions to the trial court. *Id.* The state appellate court summarized the report as follows:

(1) [Petitioner] suffered from bipolar mania resulting in sexual behavior compulsions;

(2) The behavior leading to his arrest was influenced by manic mood states and neuropsychological disinhibition;

(3) [Petitioner] experienced "grandiose delusion" during the process of planning and executing his crimes; and

(4) In his manic state, there is a continuing compulsion to engage in his particular criminal conduct.

*Serdula II* at 115 (5). The state appellate court again found that the report did not identify any specific delusion as to a fact that Petitioner had at the time of his criminal conduct that would have justified his behavior. *Id.* Additionally, the state appellate court found that the doctor testified at sentencing that he did *not* conclude that Petitioner was laboring under a delusional compulsion at the time of his criminal conduct. *Id.* at 116. The state appellate court also cited the doctor's testimony that there was no evidence Petitioner was incapable of understanding the difference between right and wrong, and cited trial counsel's testimony at the motion for new trial hearing that Petitioner did not appear to have any delusional

17

compulsions that would have supported an insanity defense. *Id.* Thus, the state appellate court found no evidence that he had a viable delusional-compulsion defense, such that trial counsel was not deficient in presenting such meritless defense. *Id.* The appellate court also found Petitioner could not show prejudice because such defense would not have been successful. *Id.*

As outlined above, Merchant filed a motion for reconsideration and a motion to supplement the record, both of which were denied. (Resp. Exs. 5-8). The Georgia Supreme Court denied the petition for certiorari. *Serdula v. State,* No. S20C1508 (Ga. Apr. 5, 2021). (Resp. Ex. 9).

Petitioner filed a state habeas corpus petition pro se in the Superior Court of Dodge County on October 1, 2021, challenging these Cobb County convictions and raising 45 grounds for relief. (Resp. Ex. 10). Petitioner then filed seven amendments between February 10, 2022, and May 18, 2022. (Resp. Ex. 11-17). He added: grounds 46-64 in his first amendment, grounds 65-69 in his second amendment, grounds 70-87 in his third amendment, grounds 88-90 in his fourth amendment, grounds 91-95 in his fifth amendment, grounds 96-101 in his sixth amendment, and grounds 102-108 in his seventh amendment (wherein he also supplemented grounds 9, 12, 33, and 65). *Id.*

An evidentiary hearing was held on November 8, 2022, at which post-remand appellate counsel, Ashleigh Merchant, testified. (Resp. Ex. 19-24).

18

Petitioner filed an eighth and final amendment adding ground 109 on December 14, 2022, a month after the hearing. (Resp. Ex. 18). Petitioner filed two briefs in support of his petition on May 15, 2024, and May 17, 2024. (Resp. Exs. 25-26). The Warden filed a response in opposition on May 31, 2024. (Resp. Ex. 27). Five days later, Petitioner filed an opposition to the Warden's response. (Resp. Ex. 28). The state habeas court denied relief in a 98-page final order entered on December 19, 2024, addressing all 109 grounds.[9]

Petitioner filed an application for a certificate of probable cause to appeal, which the Supreme Court of Georgia denied on August 26, 2025. (Resp. Ex. 30-31). A remittitur issued on September 10, 2025. (Resp. Ex. 32).

Petitioner filed this federal petition pro se on November 10, 2025, in which he challenges his Cobb County convictions and raises six grounds (with subparts). (Doc. 1). Petitioner attached a brief to his petition. (Doc. 1, pp. 13-42). Pursuant to the show cause order, Respondent has filed his answer and this brief,[10] addressing the six grounds of the petition and brief.

---

[9] The state habeas court considered ground 109, included in the eighth, post-hearing amendment. (Resp. Ex. 29, p. 94-95).
[10] Respondent was granted a four-day extension due to illness. (Docs. 6, 7).

## II.  STATEMENT OF FACTS

Respondent adopts and incorporates by reference the facts as found by the state appellate court in Petitioner's direct appeals.  *See Serdula v. State,* 344 Ga. App. 587 (2018); *Serdula v. State,* 356 Ga. App. 94 (2020). (Resp. Exs. 2, 4).

## III.  THE STANDARD OF DEFERENCE

28 U.S.C. § 2254(d), enacted in 1996 as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

"If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  This standard "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," retains the authority of federal courts to issue the writ "in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with this Court's precedents,"

and preserves the view that habeas corpus "is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (cits. omitted). "[I]f some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1301 (11th Cir. 2019) (quotation marks and citations omitted).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

> With one caveat, whatever would qualify as an old rule under our *Teague*[11] jurisprudence will constitute "clearly established Federal law, as determined by the Supreme Court of the United States under § 2254(d)((1). [Cit.] The one caveat, as the statutory language makes clear, is that § 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence.

*Williams*, 529 U.S. at 412. "A federal court of appeals decision, even one with a holding directly on point, does not clearly establish federal law for § 2254(d)(1) purposes." *Allen v. Sec'y, Dep't of Corr.*, 611 F.3d 740, 764 (11th Cir. 2010).

---

[11] *Teague v. Lane*, 489 U.S. 288 (1989).

Where, as here, the state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The standard "objectively unreasonable" is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential' (cits. omitted), and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105.  Because the *Strickland* test is a general standard, "the range of reasonable applications is substantial." *Id.*

In trying to establish that no fair-minded jurist would have reached the state court's conclusion, Petitioner must do so based solely on the "record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* 563 U.S. 170, 180-81 (2011); *see also Pope v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 1254, 1262-1263 (11th Cir. 2014). "AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." *Schriro*, 550 U.S. at 473-74.

The United States Supreme Court in *Wilson v. Sellers*, 584 U.S. 122 (2018), made clear that under § 2254, federal courts are to "look through" to

the last reasoned opinion of the state courts and "presume the unexplained decision" of the Georgia Supreme Court's denial of the CPC application "adopted the same reasoning," absent a rebuttal by the State to show that "the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision." Here, the Georgia Supreme Court summarily denied Petitioner's CPC application (Resp. Ex. 31), so this Court should "look through" to the state habeas court's final order. *Wilson*, 584 U.S. at 128.

*Strickland* sets forth a two-pronged test, both prongs of which must be met to establish ineffective assistance of counsel. 466 U.S. at 687. The first prong requires a petitioner to show that "counsel's performance was deficient," which requires a showing that counsel made errors so serious that the attorney was not functioning as that guaranteed by the Constitution. *Id*. The second prong requires a showing that the deficient performance prejudiced the defense, that is, that counsel's errors were so serious as to deprive the petitioner of a fair trial with a reliable result. *Id*. The "actual prejudice" test under the second prong requires a petitioner to show there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different," with "reasonable probability" defined as "as a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Since a petitioner must satisfy both prongs of the

*Strickland* test, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697.

A reviewing court's scrutiny of counsel's performance must be "highly deferential," and a court should not use hindsight but consider counsel's conduct from counsel's perspective at the time counsel acted. *Id*. at 689. The petitioner must identify the acts or omissions of counsel which he contends are unreasonable, while the reviewing court determines "whether, in light of all the circumstances," the challenged action was outside the range of professional competent counsel. *Id*. at 690. Counsel is "strongly presumed" to have rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

In the appellate context, an attorney has no constitutional duty to raise every nonfrivolous issue requested by a client. *Smith v. Robbins*, 528 U.S. 259, 288 (2000); *Jones v. Barnes*, 463 U.S. 745 (1983). The proper prosecution of an appeal involves a "winnowing process," with appellate counsel separating the weaker issues from the strong and focusing on the stronger issues to maximize the chances of success on appeal. *Smith v. Robbins*, 528 U.S. at 288; *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Barnes*, 463 U.S. at 751-52. Notwithstanding *Barnes*, it is still possible to bring a *Strickland*

claim based on counsel's failure to raise a particular claim, but it is difficult

to demonstrate that counsel was incompetent. *Smith v. Robbins*, 528 U.S. at

288.

## IV.  ARGUMENT AND CITATION OF AUTHORITY

### A. THE STATE HABEAS COURT'S MERITS DETERMINATIONS WARRANT DEFERENCE.
(Grounds 1(iii), 1(iv), 1(v), 2(i), 2(iii), 2(iv), 3(i), 3(ii), 5(ii), 6(ii), 6(iii))

In these grounds of his petition, Petitioner raises various claims of

ineffective assistance of counsel and due process.  Specifically, Petitioner

alleges in ground 1 that he was denied his Sixth Amendment right to

effective assistance of counsel when: (iii) motion for new trial counsel Mitch

Durham failed to properly raise ineffective assistance of trial counsel for

failing to present readily available evidence (i.e., public campaign finance

documents to show that Head was Green's treasurer for Green's judicial

campaign) relevant to the relationship between Green and Head at the first

recusal hearing and failed to move for further recusal once Judge Green

testified, at the motion for new trial stage; (iv) appellate counsel Nathanael

Horsley failed to raise this properly in the first direct appeal in *Serdula v.

State,* 344 Ga. App. 587 (2018) ("*Serdula I*"); (v) and final appellate counsel

Ashleigh Merchant failed to raise this properly in the second direct appeal in

*Serdula v. State,* 356 Ga. App. 94 (2020) ("*Serdula II*"), by failing to ensure

exhibits were included in the record on appeal.[12]

In ground 2, Petitioner alleges (i) a denial of due process for proceeding to trial while incompetent and; a denial of his Sixth Amendment right to effective assistance of counsel when: (iii) both Durham and Horsley failed to properly raise and develop at the motion for new trial stage and in *Serdula I* a claim of ineffective assistance of trial counsel for failing to demand a competency hearing upon learning of the psychological report by Dr. Shaffer and instead allowed Petitioner to waive a jury trial and stipulate to a bench trial while his competency was in doubt*;* and, (iv) Merchant failed to argue in *Serdula II* that the state court's rulings on this competency issue were contrary to federal law.

In ground 3, Petitioner alleges a denial of his Sixth Amendment right to effective assistance when: (i) trial counsel failed to move to suppress the cell phone evidence on grounds that it was seized during an unconstitutional warrantless search of his workplace, and (ii) all subsequent appellate counsel were ineffective for failing to raise this claim.

---

[12] Respondent notes that Petitioner alleges that "counsel at every stage" failed to secure the recusal of Judge Green, though he focuses on trial counsel and appellate counsel Merchant in his brief. (Doc. 1-1, pp. 25-27). Respondent parses out this ground to include each appellate counsel out of an abundance of caution. Respondent avers that the state habeas court addressed all these claims on the merits and did not find any claims procedurally defaulted. The state habeas court similarly addressed the merits of other due process and trial counsel claims in this section.

In ground 5, Petitioner alleges a denial of his Sixth Amendment right to effective assistance when: (i) he was constructively denied counsel when trial counsel failed to subject the State's case to meaningful adversarial testing, and (ii) all subsequent appellate counsel failed to properly raise this issue on direct appeal.

Here, Petitioner has not accomplished the difficult task of showing that that state habeas court's decision was contrary to or an unreasonable application of United States Supreme Court precedent. As to the ineffectiveness claims, the state habeas court's application of *Strickland v. Washington* was reasonable, i.e., a reasonable argument can be made that Petitioner's former counsel satisfied *Strickland*'s deferential standard. *Harrington*, 562 U.S. at 105. The state habeas court correctly applied the two-pronged Sixth Amendment test espoused in *Strickland*, as Petitioner did not prove both that his counsel's performance was unreasonable and that a reasonable probability existed that the result of his proceedings would have been different if not for the allegedly deficient performance. (Resp. Ex. 29). Respondent submits the state court's decision should be given deference under 28 U.S.C. § 2254(d).

### *Ground 1(iii),(iv),(v)- the Recusal Issue*

As to the issues raised in ground 1 of the petition concerning Petitioner's allegations that he was denied effective assistance of counsel

when counsel at every stage failed to secure the recusal of a "structurally biased trial judge," the state habeas court reasonably applied the two-pronged Sixth Amendment test espoused in *Strickland* as to the claims against all counsel and denied relief accordingly. (Resp. Ex. 29, pp. 67-70).

The state habeas court addressed all grounds pertaining to the recusal of Judge Green in one section, including grounds that Merchant was ineffective for not ensuring the record was complete on appeal following the denial of the second recusal motion.  (Resp. Ex. 29, pp. 67-70).

The state habeas court first correctly noted that the underlying recusal issue had been thoroughly addressed by the state appellate court (in both *Serdula I* and *II*).  (Resp. Ex. 29, p. 68). The state habeas court noted that the state appellate court found no error in the trial court's determination and that "Petitioner did not present any new facts or a change in the law to warrant reconsideration of the **ultimate issue** in habeas; therefore, the decision by the Court of Appeals in *Serdula II* stands as law of the case, and this Court is bound by the determinations of the Court of Appeals on this issue **underlying** Petitioner's ineffective assistance claims…" *Id.* (emphasis added).

As to Petitioner's claim in his state petition that Merchant failed to ensure certain exhibits were included in the record sent to the state appellate court, the state habeas court cited Merchant's acknowledgement

from the evidentiary hearing that certain exhibits (campaign finance disclosure reports and news articles) were missing from the record on appeal and she thoroughly explained the mishap in her testimony before the state habeas court. (Resp. Ex. 29, p. 69). The state habeas court summarized that Merchant did not know the exhibits were missing until *Serdula II* was decided, and she did not have any reason to anticipate the mishap due to her reliance on the clerk to forward the entire record. *Id.*

The state habeas court noted that Merchant nevertheless accepted responsibility and tried to correct the error by immediately filing a motion for reconsideration along with the missing exhibits[13], which the state appellate court denied. *Id.* The state habeas court then cited Merchant's testimony that regardless, she did not believe the missing exhibits had any bearing on *Serdula II,* because, "We did question the witnesses extensively about [the exhibits], so the contents of those exhibits was in the record, and I think that's why they [Court of Appeals] didn't change the[ir] mind on reconsideration because they knew about what was in those exhibits. They just didn't have the actual exhibit, all of the stuff that was in it had been testified to." *Id.* at 69-70.

---

[13] She also filed a motion to supplement the record, which was denied. (Resp. Ex. 7, 8).

The state habeas court then found, even assuming Merchant's performance was deficient for failing to ensure the exhibits were included, that Petitioner had failed to show how the missing exhibits—which were included in the record in the state habeas case—would have resulted in a different outcome on appeal. (Resp. Ex. 29, p. 70). Thus, the state habeas court found that Petitioner had failed to show prejudice to succeed on this claim. *Id.*

As reasonably concluded by the state habeas court, Petitioner failed to show that appellate counsel's actions regarding the missing exhibits amounted to ineffective assistance of counsel under *Strickland*. Appellate counsel had no reason to think the entire record would not be transmitted to the appellate court,[14] and she immediately tried to remedy the error once she was alerted of the omission from the appellate decision, filing motions for reconsideration and a motion to supplement the record. Additionally, the state appellate court reasonably concluded that no prejudice had been shown.

---

[14] Her notice of appeal specified that *all* documents—except for conflict notices, entry of appearances, and scheduling orders—should be transmitted to the Georgia Court of Appeals. (Resp. Ex. 23, p. 4). It noted that the transcript from the March 22, 2019, recusal hearing had been ordered but not yet filed, but that the transcript "must be included in the record along with the exhibits attached to the transcript." *Id.*

Though *Serdula II* mentioned the missing exhibits, the state appellate court nevertheless analyzed the recusal issue in spite of the missing exhibits, finding that Head "*admitted* that he agreed to serve as the treasurer of Green's state-court campaign, albeit in name only." *Serdula II* at 103 (emphasis in original). *Serdula II* further found "even assuming that Serdula accurately describes the exhibits, the trial court apparently credited Head's testimony that he played no significant role in the campaign, did not prepare the disclosures, and signed the disclosures solely in reliance on someone else." *Id.* In a footnote, the state appellate court also noted that Petitioner had claimed Head contributed $1,000 to Green's superior-court campaign, citing one of the missing exhibits. *Id.* at n. 40. Again, the state appellate court did not find this claim lacked merit *solely* because the exhibit was missing but instead went on to cite Georgia Supreme Court precedent that even if this had occurred, "recusal is not required simply because the judge previously received *any* campaign contribution from a party." *Id.* citing *Gude v. State,* 289 Ga. 46, 50 (2011) (emphasis in original). Thus, though the state appellate court noted the missing exhibits, it nevertheless addressed the recusal issue with a consideration of the contents of the exhibits.

Petitioner asserts that the state habeas court "dismissed the entire claim by stating that the Court of Appeals had already ruled on it and that

31

Petitioner presented 'no new facts,'" ignoring the fact that the appellate court never reviewed the exhibits.  However, the state habeas court, in citing Merchant's testimony and in finding no prejudice, implicitly found that the omitted exhibits would not have had any effect on the outcome of the appeal.  The Court of Appeals found no errors in the trial court's determinations—in which the exhibits were admitted and considered—and even pretermitted the contents of the missing exhibits in still ruling against Petitioner.  The state habeas court explicitly addressed Petitioner's appellate counsel ineffectiveness claim for failing to ensure the exhibits were included in the record, clearly relying on Merchant's testimony from the evidentiary hearing.

Petitioner cites to "counsel at every stage" in ground 1, though he primarily focused on Merchant's omission of the exhibits, outlined above. (Doc. 1, pp. 24-26).  However, the state habeas court also addressed the recusal issue as it pertained to Durham and Horsley.  (Resp. Ex. 29, pp. 67-69).  The state habeas court agreed with the findings by the state appellate court, finding no error in the denial of the motion to recuse.  *Id.* at 68. Accordingly, the state habeas court found that the underlying ineffective assistance of trial counsel claim lacked merit, and that any challenge appellate counsel would have raised regarding trial counsel's ineffectiveness with respect to the recusal would have been meritless on

appeal.  *Id.*  It accordingly found that appellate counsel could not be

ineffective as to those claims.  *Id. See Chandler v. Moore,* 240 F.3d 907, 917

(11th Cir. 2001) (appellate counsel does not render ineffective assistance by

declining to raise a meritless claim on appeal).  The state habeas court also

found that Petitioner had failed to show what each appellate counsel

should have done that they did not do.  (Resp. Ex. 29, pp 69).  Accordingly,

the state habeas court found that Petitioner had not overcome the

presumption that appellate counsel's performance was reasonable, and

that his claims failed.  *Id.*

   As reasonably concluded by the state habeas court, Petitioner failed

to show that either Durham or Horsley were ineffective for failing to raise

the recusal issue on appeal, namely because Petitioner did not cite what

either appellate counsel should have done that they failed to do.  First,

Durham handled the motion for new trial and preserved the recusal issue,

and Horsley indeed raised the recusal issue in *Serdula I.*  Though the state

appellate court in *Serdula I* did not rule on the merits of the recusal issue,

it did vacate Petitioner's convictions and remand for further proceedings,

finding deficiencies in the procedure implemented by the trial court in

ruling on the recusal motion.  (Resp. Ex. 2).  Petitioner also failed to show

prejudice concerning prior appellate counsel's performance, as the recusal

issue was developed on remand after Durham and Horsley's involvement

in the case ended where Petitioner had an opportunity to prove his claim. The state habeas court reasonably concluded that Petitioner failed to satisfy his burden under *Strickland* to succeed on this claim.

*Ground 2- Competency*

As to his allegations in ground 2 (iii) and (iv) concerning appellate counsel's (Durham, Horsley, and Merchant) omission of a competency issue on appeal, the state habeas court reasonably applied the two-pronged Sixth Amendment test espoused in *Strickland* and denied relief accordingly. (Resp. Ex. 29, pp. 44-59). The state habeas court also reasonably found that the underlying due process claim in ground 2(i) lacked merit.

As with the recusal issue, the state habeas court addressed numerous grounds together concerning Petitioner's psychiatric condition and competency (and his ability to consent to the waiver of a jury trial), including appellate counsel ineffectiveness claims, and made numerous findings. (Resp. Ex. 29, pp. 44-59).

First, the state habeas court noted that Merchant had raised an ineffectiveness claim on appeal concerning trial counsel's failure to argue that Petitioner suffered from a delusional-compulsion disorder that rendered him incompetent to stand trial.[15]  (Resp. Ex. 29, p. 45).  The state

---

[15] First appellate counsel, Horsley, also raised this enumeration in *Serdula I*. (Resp. Ex. 1, p. 25).

habeas court then pretermitted whether the claims pertaining to Merchant lacked merit, because she had essentially raised the same issue, and found that the claim failed, because no prejudice had been shown. *Id.*

The state habeas court addressed the grounds concerning counsel's failure to investigate Petitioner's psychiatric condition, which were not clearly addressed in *Serdula II* as it instead focused on delusional-compulsion as a possible defense to the crimes, rather than in terms of competency to stand trial. (Resp. Ex. 29, p. 52). The state habeas court found that trial counsel's testimony at the motion for new trial hearing "clearly demonstrates trial counsel did consider Petitioner's competency, and trial counsel did not see a reason to investigate further based on Petitioner's ability to communicate about the case and counsel's perception that Petitioner fully understood the nature of the proceedings against him." *Id.* The state habeas court found Petitioner was "obviously competent" at the time of trial, citing the trial court's full inquiry with Petitioner at trial regarding his mental state and his understanding of the proceedings, as well as Petitioner's appropriate responses. *Id.* Thus, the state habeas court found that Petitioner failed to demonstrate he was prejudiced by his counsel's actions in relation to his alleged incompetency, and his trial counsel and appellate counsel claims lacked merit. *Id.*

35

The state habeas court next noted that the state appellate court had not specifically addressed competency in either appeal. (Resp. Ex .29, p. 52). The state habeas court set forth the proper analysis for determining whether the competency claims would have had merit had they been raised at the appropriate time and the reasons for finding that such challenges to Petitioner's competency would have lacked merit. *Id.* at 53.

Specifically, the state habeas court cited, "the constitutional test for competency seeks to determine whether the defendant is capable of understanding the nature and object of the proceedings, whether he comprehends his own condition in reference to such proceedings, and whether he is capable of rendering his counsel assistance in providing a proper defense." *Id.* citing *Sims v. State,* 279 Ga. 389 (2005). The state habeas court further acknowledged that the trial court has a sua sponte duty to inquire into a defendant's competency "only when information becomes known to it, prior to or at the time of trial, sufficient to raise a bona fide doubt regarding the defendant's competence." *Id.*

Turning to the facts of Petitioner's case, the state habeas court noted Dr. Shaffer's report which included a finding that "the grandiosity evidence in Mr. Serdula's mental state also interferes with his ability to assist counsel." (Resp. Ex. 29, p. 54). The state habeas court found that the fact his "mental state might *interfere* with his ability to assist counsel does not

36

mean that he was incapable of assisting counsel." *Id.* (emphasis in original). The state habeas court cited trial counsel's testimony at the motion for new trial concerning his discussions about Petitioner's competency with Dr. Shaffer. *Id.* Trial counsel said:

> Dr. Shaffer's not saying that he's unable to assist his attorney, that he is incompetent and unable to do that. My sense of talking with [Petitioner] and dealing with him, he was very bright. He got the grasp of everything, I thought, fairly well. He was able to communicate with me, talk about the facts of the case, and understood what we were attempting to do. I think he understood also the gravity of his situation. So I didn't feel, and I don't think Dr. Shaffer felt – otherwise, he would have done the additional testing –that he was incompetent to stand trial.

*Id.* The state habeas court credited trial counsel's testimony that, after talking with Dr. Shaffer, trial counsel did not feel that Petitioner's mental afflictions did not equate to him "not understanding, not being able to assist me in trying his case." *Id.*

The state habeas court noted that while *Serdula II* did not address competency directly, it made specific factual conclusions relevant to competency, to wit:

> At the outset of trial, when the trial court questioned Serdula at length regarding his decision to proceed with a stipulated bench trial, Serdula understood and answered each question appropriately without any indication that he was confused or mentally impaired. Among other things, Serdula testified that he was able to understand statements and questions, he had never been a patient in a mental institution or under the care of a psychologist or psychiatrist, and he understood that he was waiving his right to a jury trial. Serdula's counsel represented to

the court that he believed Serdula understood the stipulated
facts, and how stipulations affect his rights.  Ultimately, the
court found that based on Serdula and his counsel's responses to
its questions, as well as the court's observations in the courtroom,
Serdula understood his various rights, and he chose a stipulated
bench trial as opposed to a jury trial freely, knowingly, and
voluntarily without undue influence, compulsion, or duress.
Thus, although it is irrelevant to a delusional-compulsion
defense, it is worth noting that there is no indication in the
record that Serdula was laboring under any mental disability at
the time of trial.

(Resp. Ex. 29, p. 55), citing *Serdula II* at n. 90.

The state habeas court adopted these findings and found that

Petitioner was competent at trial for purposes of waiving his right to a jury

trial.  *Id.* at 56.  The court also found such waiver was valid and was made

knowingly and voluntarily.  *Id.*  Thus, the habeas court found: any

challenges to the validity of Petitioner's waiver would have been

unsuccessful at trial, trial counsel was not ineffective in failing to challenge

the waiver, and such issue would have been meritless on appeal, defeating

any appellate counsel ineffectiveness claim.  *Id.*

Next, the state habeas court found that even if the trial court had

access to the complete psychological report prior to trial, and even

assuming the trial court had ordered a competency evaluation, "it is clear

based on trial counsel's testimony at the motion for new trial[16] and based

---

[16] "There really, in my mind, were no issues from the standpoint in him being
competent."  (Resp. Ex. 21, p. 17).

on Petitioner's colloquy with the trial court at the outset of the stipulated bench trial that Petitioner was competent at the time of trial." (Resp. Ex. 29, p. 55). Thus, the state habeas court found any challenge to Petitioner's competency would have been meritless in the trial court. *Id.* The state habeas court further found the trial court had no information before it to raise a reasonable doubt about his competency, triggering its obligation to order an evaluation. *Id.* The state habeas court found that even presuming trial counsel or the trial court erred in not ordering a competency evaluation, any error was harmless, because the evidence established Petitioner's competency at trial. *Id.* at 55-56. Thus, the state habeas court found this issue (either ineffective assistance of trial counsel or trial court error) would have lacked merit on appeal, such that appellate counsel was not ineffective for failing to raise a meritless issue. *Id.* at 56.

As to the ineffectiveness claim pertaining to appellate counsel Durham for failing to present and cross-examine trial counsel properly, the state habeas court found that Durham *did* cross-examine trial counsel regarding the full contents of the psychological report, which showed that trial counsel was aware of the relevant findings and had discussed the same with Petitioner pre-trial. (Resp. Ex. 29, p. 57-58). The state habeas court found that the claim as it pertained to Durham thus failed. *Id.* at 58.

As to the ineffectiveness claim pertaining to Horsley and his handling of Petitioner's psychiatric condition, the state habeas court found that, even pretermitting deficiency, the issue would have lacked merit on appeal.  (Resp. Ex. 29, p. 58).

As to the standalone due process claim alleging that Petitioner was tried after waiving a jury trial when there was evidence he may have been incompetent, the state habeas court reiterated there was no evidence to suggest Petitioner was not competent to stand trial, such that the claim provided no basis for relief.  (Resp. Ex. 29, p. 79).

In conclusion, as reasonably determined by the state habeas court, Petitioner made no showing that he was incompetent at the time of trial.  (Resp. Ex. 29, p. 44-59).  Accordingly, the trial counsel ineffectiveness claim related to Petitioner's alleged incompetency, the appellate counsel claims for failing to raise the issue on appeal, and the standalone due process claim all lacked merit.

### Ground 3- Search of Workplace

As to Petitioner's ineffectiveness allegations in ground 3(i) and 3(ii) concerning counsel's failure to challenge the warrantless search of Petitioner's workplace, the state habeas court reasonably applied the two-pronged Sixth Amendment test espoused in *Strickland* and denied relief.  (Resp. Ex. 29, pp. 29-35).

As with the previous issues, the state habeas court addressed all grounds concerning the warrantless search of Petitioner's workplace in one section.  (Resp. Ex. 29, pp. 29-35).

The state habeas court began its analysis with whether the search of Petitioner's workplace and warrantless seizure of his phone were proper, as all the ineffectiveness claims hinged on this predicate legal issue.  (Resp. Ex. 29, p. 29). The state habeas court then cited United States Supreme Court precedent that employees do not have a reasonable expectation of privacy in common areas of the workplace.  *Id.* (citing *O'Connor v. Ortega,* 480 U.S. 709 (1987)). The state habeas court cited Georgia Supreme Court precedent, which relied on *Ortega,* that "some office desks, filing cabinets, and similar items may be so open to the public or be subject to such general use that no one person has any reasonable expectation of privacy in them." *Id.* (citing *Harper v. State,* 283 Ga. 102 (2008)).  Further, the court noted that the exclusionary rule applies only to government action, and not action by private individuals.  *Id.* at 30.

The state habeas court then noted that Petitioner's cell phone was found by a coworker in the employee bathroom of the dental office where Petitioner was employed as a nurse anesthetist.  (Resp. Ex. 29, p. 30).  The state habeas court found that the coworker contacted law enforcement and gave police consent to enter the premises, including the bathroom.  *Id.*  The

41

state habeas court found that the coworker "clearly had equal access to the employee bathroom" where Petitioner had hidden his phone to surreptitiously record his coworkers under the guise that he was "investigating" who might be stealing drugs from the office.  *Id.*  When police arrived, the coworker showed them where the phone was hidden.  *Id.*

The state habeas court noted that Petitioner had approached the police while they were collecting the phone and informed them it was his phone.  (Resp. Ex. 29, p. 30).  The state habeas court found that the officers were not obligated to give the phone back to Petitioner, however, nor were they required to secure a warrant based on his claim of ownership, which the court noted had been issues raised by Durham at the motion for new trial stage.  *Id.*  The state habeas court found that the officer's seized the phone under the plain view doctrine, which allowed them to seize the phone if they were lawfully present in the location where the evidence (with immediately apparent incriminatory value) was in plain view.  *Id.*

The state habeas court further found that Petitioner's coworkers had equal access to the bathroom, reducing Petitioner's expectation of privacy for Fourth Amendment purposes.  (Resp. Ex. 29, p. 31).  The court found that the coworker had lawful, equal access to the bathroom and gave consent to police to enter the bathroom.  *Id.*  Thus, the court found no violation of Petitioner's privacy rights to the bathroom area.  *Id.*

The state habeas court then described where the phone was hidden. (Resp. Ex. 29, p. 31). Specifically, padding covering the pipes under the sink had a hole cut out of it, and the phone was positioned in the padding in such a way that the camera in the phone was pointed towards the toilet. *Id.* Accordingly, it would have been readily apparent to law enforcement that there was a camera most likely being used to photograph or record private acts of Petitioner's coworkers in the employee bathroom. *Id.* Thus, the state habeas court found that the officers had more than enough information to establish probable cause to suspect the phone was evidence of the crime of unlawful surveillance, and they made a common-sense decision to confiscate the phone—the incriminating nature of the hidden phone in a bathroom was "without question, immediately apparent." *Id.* Thus, the state habeas court found that the phone was lawfully seized under the plain view doctrine. *Id.*

The state habeas court then made an alternative finding assuming arguendo that the police's action of removing the padding covering the sink pipes constituted a Fourth Amendment "search." (Resp. Ex. 29, p. 32). The state habeas court found that the attendant facts and circumstances clearly established that the search was done with consent from Petitioner's coworker who shared common access to the bathroom area. *Id.* The state habeas court cited Georgia precedent that "consent to search given by one

43

person with common authority in the absence of another objecting person with common authority is a valid exception to the search warrant requirement." *Id.* (citing *State v. Randolph,* 278 Ga. 614, 615 (2004)).

The state habeas court also found that when Petitioner appeared on the scene and claimed ownership of the phone, the seizure had already been completed, so Petitioner's objection was of no consequence. (Resp. Ex. 29, p. 32). To the extent Petitioner was arguing that his presence somehow "withdrew consent," the state habeas court found that such argument was not supported by the facts or law. *Id.* at 32-33. The state habeas court cited *Georgia v. Randolph,* 547 U.S. 103, 121 (2006), quoting, "If a potential defendant with self-interest in objecting [to law enforcement searching an area where more than one person has common authority] is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Id.* at 33.

The state habeas court found that any "search" by law enforcement was lawful following consent from the coworker, and Petitioner was "not invited to take part in the threshold colloquy" of whether police were entitled to search the bathroom. (Resp. Ex. 29, p. 33). The state habeas court found that this was a "textbook situation where Petitioner, not present and objecting, 'lost out' on his ability to stop the search." *Id.*

44

The state habeas court again summarized that there were no Fourth Amendment violations to the warrantless search of the workplace or the warrantless seizure of the phone, such that the exclusionary rule did not apply.  (Resp. Ex. 29, p. 33).

The state habeas court then proceeded to assess the ineffective assistance of trial and appellate counsel claims based on that foundational determination.  (Resp. Ex. 29, p. 34).  The state habeas court found that Petitioner had failed to call trial counsel as a witness, but that the court had reviewed trial counsel's testimony at the motion for new trial hearing.  *Id.*  The state habeas court "discern[ed] no testimony that points to deficient performance for trial counsel's failure to pursue additional suppressions claims as to the cell phone."  *Id.*

As any challenge to the warrantless search and seizure of the phone would have been meritless under the facts, and "because the ultimate issues as to the search and seizure had no merit," the habeas court concluded that Petitioner failed to demonstrate prejudice. *Id.*  "In other words, because the cell phone would not have been excluded as evidence, Petitioner cannot show a reasonable probability of a different result at trial."  *Id.*  Thus, the court found that Petitioner failed to establish deficient performance and prejudice and that his trial counsel ineffectiveness claim failed accordingly.  *Id.*

45

As to his related appellate counsel ineffectiveness claim, the state habeas court found that Durham had made specific arguments at the motion for new trial hearing in support of the exclusion of the phone. (Resp. Ex. 29, p. 34). The trial court was not persuaded and denied the motion. *Id.* While the suppression issues were not raised in the first appeal, the habeas court acknowledged that it is well-established that it is the attorney's decision as to which issues to raise on appeal. *Id.* The state habeas court found that, because the issue did not have likely merit on appeal, appellate counsel's decision not to raise it was reasonable. *Id.*

As reasonably determined by the state habeas court, Petitioner made no showing that trial counsel was ineffective for failing to challenge the warrantless search of his workplace, specifically the bathroom where his cell phone was located, because such underlying issue had no merit under the Fourth Amendment, and trial counsel was not ineffective for failing to raise a meritless motion. (Resp. Ex. 29, p. 29-35). The state habeas court's determination that appellate counsel did not render ineffective assistance of counsel by declining to raise these claims was similarly a reasonable application of clearly established federal law. *See Chandler v. Moore,* 240 F.3d 907, 917 (11th Cir. 2001) (appellate counsel does not render ineffective assistance by declining to raise a meritless claim on appeal).

46

*Ground 5- Failing to Subject the State's Case to Meaningful Adversarial Testing*

In ground 5, Petitioner alleges that he was denied his Sixth Amendment right to counsel when his trial counsel failed to subject the State's case to meaningful adversarial testing by proceeding with a stipulated bench trial and that subsequent appellate counsel failed to raise this issue on appeal. (Doc. 1-1, pp. 38-39).

Petitioner did not frame this ineffectiveness claim as rising to the level of *Cronic*[17] in his state habeas petition, only asserting that trial counsel was ineffective for failing to provide any defense or object to any issue at trial, and that subsequent appellate counsel were ineffective for failing to raise the same. (Resp. Ex. 15; Resp. Ex. 29, p. 82). The ineffectiveness of trial counsel claim (which was found to be procedurally defaulted) is discussed below in Part D.

As to the appellate counsel claims, Petitioner faulted Durham (ground 91 in his state habeas petition), Horsley (ground 92), and Merchant (ground 93) for failing to raise this issue on appeal. (Resp. Ex. 15). As to the underlying issue, the state habeas court cited the record that showed Petitioner was thoroughly questioned by the trial court as to whether he understood the proceedings and his constitutional rights, and that he

---

[17] *U.S. v. Cronic,* 466 U.S. 648 (1984).

affirmatively chose to proceed to a stipulated bench trial where he stipulated that the facts were sufficient to warrant his convictions. (Resp. Ex. 29, p. 83). The state habeas court found that trial counsel was questioned as to whether he had explained the difference between a guilty plea and a bench trial and whether he believed Petitioner understood the stipulated facts and how the stipulation may affect his rights. *Id.*

Trial counsel responded affirmatively to each question and noted that he believed it was in Petitioner's best interest to stipulate to the facts, because Petitioner had discussed with trial counsel that he did not want to put "these ladies through any [] more than what they've already been subjected to. It's his decision that this is the direction that he wants to go with the case." *Id.* The trial court found that Petitioner understood the posture of the stipulated bench trial as well as the effects of a stipulation. *Id.* The state habeas court further cited the trial court's determination that Petitioner's decision to have a stipulated bench trial instead of a jury trial or guilty plea was freely, knowingly, and voluntarily made. *Id.* at 83-84. Trial counsel had requested two additional stipulations—that the State could not prove ejaculation or that Petitioner was erect at the time of the crimes. (Resp. Ex. 29, p. 84).

The state habeas court next noted trial counsel's testimony at the motion for new trial hearing that they did not really have any defenses other

than the motion to suppress and that Petitioner had failed to show a defense of delusional compulsion would have had merit. *Id.* The state habeas court also found that Petitioner had failed to set forth any meritorious objections trial counsel should have made, or meritorious defenses that should have been presented. *Id.* Accordingly, the state habeas court found that trial counsel's assessment was not unreasonable considering the evidence. *Id.*

Moreover, as the evidence against Petitioner was overwhelming, especially the videos from his phone showing the crimes, and it was clear from the record that *both* trial counsel and Petitioner agreed the best strategy was to "throw himself at the mercy of the trial court without admitting guilt, obtain a ruling, and obtain appellate review of the suppression issues pertaining to Petitioner's cell phone," the habeas court found that Petitioner failed to demonstrate either deficient performance or prejudice *Id.* at 85.

The state habeas court found that the claims that Durham, Horsley, and Merchant were ineffective for failing to raise these claims post-trial and on direct appeal failed, because the underlying trial counsel claim would have lacked merit and appellate counsel is not effective for failing to raise a meritless issue on appeal. (Resp. Ex. 29, p. 85–86). The state habeas court also found that Petitioner failed to identify what additional questioning or investigation Durham should have done prior to the motion for new trial

with respect to trial counsel's actions and thus had failed to overcome the strong presumption that Durham's performance was reasonable. *Id.*

The state habeas court's determination that appellate counsel did not render ineffective assistance of counsel by declining to raise these claims was a reasonable application of clearly established federal law. *See Chandler v. Moore,* 240 F.3d 907, 917 (11th Cir. 2001) (appellate counsel does not render ineffective assistance by declining to raise a meritless claim on appeal).

Despite this, Petitioner asserts that the state habeas court misapplied federal law, specifically in failing to find that he was constructively denied counsel at trial under the standard set by the United States Supreme Court in *United States v. Cronic,* 466 U.S. 648 (1984). (Doc. 1-1, p. 38). But a strategic concession of guilt does not necessarily rise to ineffective assistance under *Cronic. See, e.g., Florida v. Nixon,* 543 U.S. 175, 190 (2004) ("On the record thus far developed, counsel's concession of Nixon's guilt does not rank as a failure to function in any meaningful sense as the Government's adversary.") (cleaned up). Here, trial counsel strategically, after consultation with Petitioner who agreed with this approach, opted for a stipulated bench trial to preserve the ruling on his motion to suppress (which would have been waived by entry of a guilty plea), to spare the victims (Petitioner's desire),

and to gain favor with the trial court in terms of sentencing.[18] Considering

that most, if not all, of the evidence against Petitioner stemmed from data

collected from his phone showing his crimes, this performance "was more

than adequate, and far from the sort the Supreme Court envisioned would

trigger *Cronic*'s presumption of prejudice." *Darden v. United States,* 708

F.3d 1225, 1231 (2013).

### *Ground 6- Delusional-Compulsion Defense*

In ground 6, Petitioner claims that appellate counsel failed to properly

litigate trial counsel's failure to present a viable delusional-compulsion

defense. (Doc. 1, p. 39). As outlined above, the claim that trial counsel

rendered ineffective assistance for failing to argue that Petitioner suffered

from a delusional-compulsion disorder was raised in both *Serdula I* and *II* by

Horsley and Merchant, respectively. (Resp. Exs. 1, 3). The state appellate

court's analysis of this ground, in which it concluded that Petitioner had no

viable delusional-compulsion defense and failed to establish either deficient

performance or prejudice in trial counsel, is outlined thoroughly above.

The state habeas court found that the state appellate court had

addressed the ultimate issue—whether Petitioner suffered from a

---

[18] As outlined above, at sentencing the trial court "considered the fact that
[Petitioner] waived his right to a jury trial… thereby relieving the victims of
having to come take the witness stand… and that's a big thing as far as
mitigation." (Resp. Ex. 21, p. 447).

delusional compulsion—in *Serdula II* in connection with the ineffectiveness claim. The state habeas court copied the relevant portion of the appellate decision into its order concerning this issue, which ultimately addressed Petitioner's criminal responsibility at the time of the crimes (i.e., whether he suffered from a delusional compulsion). (Resp. Ex 29, p. 45-46). This portion of the copied appellate decision cited Dr. Shaffer's psychological report which was tendered at the motion for new trial hearing, as well as other evidence, and found that Petitioner had not presented any evidence he had a viable delusional-compulsion defense, and that trial counsel could therefore not be ineffective. *Id.* at 46.

The state habeas court then summarized Petitioner's argument concerning his ineffectiveness claim into eight points. (Resp. Ex. 29, p. 48). The state habeas court found some support for some of Petitioner's factual contentions, such as that the psychological report could not have been presented at trial as it was prepared 13 days after trial. *Id.* at 49. The state habeas court also addressed Petitioner's contentions concerning two different psychological reports in the record. *Id.* The state habeas court then found that the full and accurate report *was* considered on direct appeal, with the state appellate court noting that the report indicated Petitioner (1) suffered from bipolar mania resulting from sexual-behavior compulsions; (2) the behavior leading to his arrest was influenced by manic

52

mood states and neuropsychological disinhibition; (3) he experienced grandiose delusions during the process of planning and executing his crimes, and (4) in his manic state, there is a continuing compulsion to engage in this particular criminal conduct. *Id.* at 50. However, the report, and Dr. Shaffer's testimony, also established that "Petitioner was *not* laboring under any delusional compulsion at the time of his criminal conduct." *Id.* at 8. Trial counsel additionally testified at the motion for new trial hearing that Petitioner did not appear to have any delusional compulsions that would support an insanity defense. *Id.* at 46. The state appellate court found that Petitioner had not identified any specific delusion related to any particular fact which, if true, would have justified his criminal acts, a fact necessary to justify a finding of not guilty by reason of insanity under Georgia law. *Id.* at 46.

The state habeas court found that "it is clear that the Court of Appeals determined challenges to the ultimate issue of delusional compulsion would not have been meritorious at trial." *Id.* at 51. Accordingly, the state habeas court found that it was bound to accept the state appellate court's determinations regarding the delusional-compulsion issue, and none of Petitioner's appellate counsel could be ineffective for failing to raise this meritless issue. *Id.* The state habeas court found that Petitioner had not presented any new evidence regarding a delusional

53

compulsion defense, so the appellate court's decision on the issue stood as the law of the case. *Id.* Accordingly, all the ineffectiveness claims pertaining to the possible defense of a delusional compulsion lacked merit. *Id.*

As reasonably determined by the state habeas court, Petitioner made no showing that any of his appellate counsel were deficient for their handling of the delusional-compulsion issue on appeal. As outlined above, the issue *was* raised on direct appeal in both *Serdula I* and *II*. Though Petitioner focuses on aspects of Dr. Shaffer's report highlighting his mental afflictions, he ignores the aspects of the record that also demonstrated he was *not* suffering from delusional-compulsions and that his trial counsel agreed with Shaffer's assessment.[19] *Serdula II* at 116. In other words, Petitioner has not shown that the state appellate court and state habeas court erred in finding that he had not presented evidence to show that a delusional-compulsion defense would have been viable.

In conclusion, the state habeas court found that appellate counsel made a reasonable tactical decision not to pursue this issue on appeal, or trial counsel's ineffectiveness on appeal. *Id.* The law is clear that "a state

---

[19] Trial counsel said, "There weren't any delusional compulsions that would rise to a level of being able to use it as a defense in the case." (Resp. Ex. 21, p. 17).

court's interpretation of state law…binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018) ("On habeas review, federal courts may not second guess state courts on questions of state law…Accepting the Court of Appeals' interpretation of Georgia law, it was thus correct in holding that Green did not suffer *Strickland* prejudice."); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.").

In conclusion, as to ground 1(iii), 1(iv), 1(v), 2(iii), 2(iv), 3(i), 3(ii), 5(ii), 6(ii), and 6(iii), the state habeas court reasonably concluded that Petitioner failed to show both that counsel's performance was deficient and to establish the requisite prejudice. (Resp. Ex. 29). The state habeas court also reasonably concluded that the underlying due process claim in ground 2(i) lacked merit. Therefore, Respondent urges this Court to give deference to the state habeas court's decisions and deny relief on these grounds.

### B. THE CLAIMS IN GROUNDS 2(ii), 4(i), 4(ii), AND 6(i) ARE NEW BUT DEFAULTED

In ground 2(ii), Petitioner alleges that he received ineffective assistance of trial counsel, because trial counsel failed to demand a competency hearing upon learning of the psychological report by Dr. Shaffer,

and instead allowed Petitioner to waive a jury trial and stipulate to a bench trial while Petitioner's competency was in doubt.[20]  In ground 4(i), Petitioner alleges that he received ineffective assistance of trial counsel because trial counsel failed to move to suppress the fatally overbroad search warrant on the grounds that it lacked a temporal limitation.[21]  In ground 4(ii), Petitioner alleges that each appellate attorney failed to raise trial counsel's ineffectiveness on the basis outlined in ground 4(i).  In ground 6(i), Petitioner alleges a denial of due process when trial counsel failed to present a viable delusional compulsion defense and subsequent appellate counsel failed to properly litigate this constitutional failure.[22]  Respondent submits that these claims are new as pled but being procedurally defaulted under Georgia's successive petition rule, O.C.G.A. § 9-14-51, as it is clear that such claim

---

[20] A similar issue was raised by appellate counsel in *Serdula I* and *II,* asserting that trial counsel was ineffective "for failing to argue that [Petitioner] suffered from a delusional compulsion that rendered him incompetent to stand trial," however this specific framing is new.  (Resp. Ex. 1, p. 25; Resp. Ex. 3, p. 51).

[21] Petitioner raised a multitude of grounds challenging the search warrant in his state habeas case, including for lack of particularity, but none of the grounds alleged that the search warrant lacked particularity based on the warrant's overbreadth for lack of a temporal limitation, as raised here.  *See* (Resp. Ex. 29, pp. 35-36); (Resp. Exs. 10-18).

[22] Petitioner raised a due process ground in ground 94 of his state habeas petition, claiming that his due process rights were violated by trial counsel's failure to raise a defense or object at trial, generally, but did not specifically raise trial counsel's omission of a delusional compulsion defense as violative of due process.  (Resp. Ex. 29, p. 83; Resp. Ex. 15, p. 2).

would be deemed successive if now raised in a second state collateral attack.

*Chambers v. Thompson*, 150 F.3d 1324 (11th Cir. 1998).

This Court is familiar with Georgia's successive petition rule for habeas corpus cases, which provides as follows:

> All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

O.C.G.A. § 9-14-51.

The purpose of this successive provision is to discontinue the practice of filing multiple petitions challenging a single judgment of conviction. *Hunter v. Brown*, 236 Ga. 168, 223 S.E.2d 145 (1976). When faced with a second or subsequent petition, a state reviewing court must determine as a threshold matter whether any new claims raised by a petitioner could reasonably have been raised in his prior habeas corpus case or are constitutionally non-waivable. *Smith v. Zant*, 250 Ga. 645, 301 S.E.2d 32 (1983). The Georgia Supreme Court looks to the facts and circumstances of the individual case to make that determination. *Tucker v. Kemp*, 256 Ga. 571, 575, 351 S.E.2d 196 (1987).

The exhaustion requirement of 28 U.S.C. § 2254(b) and (c) ordinarily requires that grounds for relief be "fairly presented" to the state courts to give the state a chance to rule on the issue. *Duncan v. Henry*, 513 U.S. 364 (1995).

> But, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless "judicial ping-pong" and just treat those claims now barred by state law as no basis for federal habeas relief.

*Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998). *See also Baldwin v. Johnson*, 152 F.3d 1304, 1311 (11th Cir. 1998) (a habeas corpus petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not previously evaluated). The rule that a state court's judgment must clearly and expressly say it is resting on a state procedural bar in order to bar review in federal court simply has no application where the claim is new and has never been presented to the state court. *Teague v. Lane*, 489 U.S. 288, 299 (1989).

The Eleventh Circuit has held that Georgia's successive petition rule:

> [S]hould be enforced in federal habeas proceedings against claims never presented in state court, unless there is some indication that a state court judge would find the claims in question "could not reasonably have been raised in the original or amended [state habeas] petition."

*Chambers v. Thompson*, 150 F.3d at 1327 (quoting O.C.G.A. § 9-14-51).

Here, Petitioner had the opportunity to raise these claims as now pled before the state courts, either on direct appeal or in his state habeas corpus case, but he did not. It is clear that the state courts would deem them to be successive if raised in a second collateral attack as they are not based on new facts or new law, and in fact, are very similar to other grounds he did raise in his state habeas case. As such, Respondent urges this Court to find that these claims are new but procedurally defaulted and provide no basis for relief.

## C. GROUND 1(ii) IS DEFAULTED

In ground 1(ii), Petitioner alleges that trial counsel failed to present readily available evidence at the first recusal hearing to secure the recusal of Judge Green and failed to move for further recusal once Judge Green testified at the first recusal hearing.  Respondent submits that this ground was raised on direct appeal in *Serdula I,* and the state appellate court found it waived under state procedural rules.  (Resp. Exs 2, pp. 10-11; Resp. Ex. 33, p. 5).  Respondent urges this Court to defer to this finding.

On direct appeal in *Serdula I*, Petitioner raised in a motion to remand the issue that trial counsel was ineffective in his presentation of the motion to recuse.  (Resp. Ex. 33, p. 5).  In addressing this issue on appeal, the state appellate court found that no remand was necessary, because this issue was waived.  (Resp. Ex. 2, p. 10).  The appellate court found that trial counsel's

ineffectiveness had to be raised at the motion for new trial stage, and that this specific aspect of trial counsel's performance was never raised, either in the motion for new trial or at the hearing on the motion. *Id.* at 11. Thus, the appellate court found that the argument was waived and that Petitioner was not entitled to a hearing on the issue on remand. *Id.*

Respondent further submits that Petitioner has failed to establish cause and actual prejudice as defined under federal law to overcome the default of this ground.

Cause as defined in *Murray v. Carrier* to overcome a default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," such as whether "the factual or legal basis for the claim was not reasonably available" or that "some interference by officials'" made compliance with the procedural rule impracticable. *Murray*, 477 U.S. at 488 (quoting *Brown v. Allen*, 344 U.S. 443, 486 (1953). "Cause" may also be ineffective assistance of counsel, although the Sixth Amendment claim must be exhausted in the state courts, either as an independent claim or labeled as cause. *Murray*, 477 U.S. at 488-89.

As set out in the discussion of grounds 1(iii), 1(iv), 1(v), above, Petitioner has failed to show ineffective assistance of counsel as "cause" to excuse the default of this claim. Additionally, Petitioner has failed to show

any form of external impediment that prevented him from preserving this issue for appellate review or that interference by state officials made compliance impracticable.

Since Petitioner cannot establish "cause," this Court need not inquire into prejudice. *Smith v. Murray*, 477 U.S. 527 (1986). However, as set out above in addressing the corollary appellate counsel claims based on this trial counsel claim outlined in grounds 1(iii), 1(iv), 1(v), Petitioner has also not established the requisite prejudice.

Accordingly, Respondent urges the Court to defer to the state appellate court's finding of waiver and find that ground 1(ii) provides no basis for relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### D. GROUND 1(i) AND GROUND 5(i) ARE DEFAULTED

In ground 1(i), the state habeas court determined the due process claim connected to the recusal issue was procedurally defaulted. (Resp. Ex. 29, p. 70). In ground 5(i), the state habeas court determined that the trial counsel ineffectiveness claim for failing to provide any defense or object to any issue at trial was procedurally defaulted. *Id.* at 82. Respondent urges the Court to defer to the findings of default. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

As to ground 1(i), in its order denying relief, the state habeas corpus court found that Petitioner's ground alleging a due process violation

61

regarding a fair tribunal based on his contention that there was an appearance of partiality when Judge Green became a witness during the first recusal hearing was procedurally defaulted. (Resp. Ex. 29, p. 70). Specifically, the state habeas court found that Petitioner had already raised and litigated the recusal challenges on appeal and that the state appellate court had decided the recusal issue, albeit not specifically as a due process claim. *Id.* The state habeas court found that Petitioner failed to present new facts or a change in the law to warrant reconsideration of the recusal determination in habeas, and that Petitioner had failed to show "cause and prejudice" to overcome the procedural bar caused by his failure to raise the issue as one of a due process violation, citing *Bruce v. Smith,* 274 Ga. 432, 434 (2001). *Id.*

As to ground 5(i), the state habeas court found this trial counsel claim procedurally defaulted, because it was not raised at the motion for new trial or on appeal. (Resp. Ex. 29, p. 82). The court found that Petitioner failed to present evidence at the hearing to satisfy the "cause and prejudice" test to overcome the default. *Id.* at 82-83. In addressing cause and prejudice, the court found that Petitioner had failed to establish that trial counsel's performance was unreasonable for failing to object or present defenses at trial. (Resp. Ex. 29, p. 85). The court found that the evidence against Petitioner was "overwhelming," "particularly the videos obtained from

Petitioner's cell phone" and that it was obvious from trial counsel's testimony at the motion for new trial hearing that Petitioner and counsel agreed that the best strategy was for Petitioner to "essentially throw himself at the mercy of the trial court without admitting guilt, obtain a ruling, and obtain appellate review of the suppression issues pertaining to Petitioner's cell phone." *Id.* The state habeas court noted from the testimony that both trial counsel and Petitioner wanted to preserve the challenges to the rulings on the motion to suppress and that a guilty plea would have waived those claims. *Id.* at n. 48. Thus, the state habeas court found that Petitioner failed to establish prejudice, because he did not establish any meritorious objection or defense that trial counsel should have advanced. *Id.* at 85. Petitioner's mere speculation that trial counsel should have objected or presented defenses was deemed insufficient. *Id.*

The Supreme Court of Georgia summarily denied Petitioner's CPC application to appeal the habeas court's decision. (Resp. Ex. 31). Under the "look through" presumption of *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), this Court "will presume" that the Georgia Supreme Court's ruling "did not silently disregard that bar and consider the merits." *See Wilson*, 138 S.Ct. at 1194-95 (discussing the application of the "look through" presumption for both procedural default and merits rulings).

O.C.G.A. § 9-14-48(d) of Georgia's habeas corpus statute provides:

> The court shall review the trial record and transcript of proceedings and consider whether the petitioner made timely motion or objection or otherwise complied with Georgia procedural rules at trial and on appeal and whether, in the event the petitioner had new counsel subsequent to trial, the petitioner raised any claim of ineffective assistance of trial counsel on appeal; and absent a showing of cause for noncompliance with such requirement, and of actual prejudice, habeas corpus relief shall not be granted.  In all cases habeas corpus relief shall be granted to avoid a miscarriage of justice.

Cause as defined under state law to excuse a default under O.C.G.A. § 9-14-48(d) may be constitutionally ineffective counsel under the *Strickland* standard.  *Turpin v. Todd*, 268 Ga. 820, 826 (1997).  Actual prejudice can be shown by satisfying either the prejudice standard of *Strickland* or the actual prejudice test of *United States v. Frady*, 456 U.S. 152 (1982).  *Todd*, 268 Ga. at 829.  *Frady* requires that a petitioner show not merely that errors at trial created a possibility of prejudice, but that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Frady*, 456 U.S. at 170.

The order denying relief shows that the state habeas court found that Petitioner failed to establish cause and prejudice as defined under state law to overcome his default of the above claims.  For the same reasons that Petitioner did not establish cause and prejudice under state law, Respondent submits that Petitioner has failed to establish cause as defined in *Murray v. Carrier*, 477 U.S. 478 (1986), and actual prejudice to overcome the default of

these claims. Accordingly, Respondent urges this Court to defer to the state habeas court's finding of default, decline to reach the merits, and deny relief as to ground 1(i) and ground 5(i).

CONCLUSION

WHEREFORE, Respondent prays that this Court deny habeas corpus relief.

Respectfully submitted,

CHRISTOPHER M. CARR          112505
Attorney General

BETH A. BURTON               027500
Deputy Attorney General

s/ Meghan H. Hill
MEGHAN H. HILL               342572
Senior Assistant Attorney General

s/ Elizabeth H. Brock
ELIZABETH H. BROCK           879494
Assistant Attorney General

Please serve:
ELIZABETH H. BROCK
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone: (404) 458-3631
ebrock@law.ga.gov

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this day served the within and foregoing

BRIEF, prior to filing the same, by depositing a copy thereof, postage

prepaid, in the United States Mail, properly addressed, upon:

> Paul Patrick Serdula
> GDC# 1000702570
> Dodge State Prison
> P.O. Box 276
> Chester, GA 31012

This 18th day of February, 2026.

> s/ Elizabeth H. Brock
> ELIZABETH H. BROCK
> Assistant Attorney General