FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 09 2026

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAUL PATRICK SERDULA,
    Petitioner,

v.    CIVIL ACTION NO.
1:25-CV-7150-ELR-JSA
HABEAS CORPUS (28 U.S.C. § 2254)

ERIC COX, WARDEN,
    Respondent.

## PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER-RESPONSE

### INTRODUCTION

The Respondent's Answer-Response does little more than parrot the flawed findings of the state habeas court without citing the actual trial record. The Respondent attempts to manufacture "procedural defaults" for claims that were, in fact, exhaustively litigated in state habeas proceedings. Furthermore, the Respondent relies heavily on the deference afforded to state courts under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), while ignoring that the state court's rulings were based on blatant misrepresentations of the record (unreasonable determinations of fact) and the misapplication of Supreme Court precedent (unreasonable applications of federal law).

The cascading failures of counsel at every stage of Petitioner's state proceedings deprived him of a fair tribunal, a competent jury waiver, and meaningful adversarial testing, resulting in a fundamentally unjust conviction. Because the state courts unreasonably refused to remedy these structural constitutional violations, federal habeas relief is warranted.

### STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a federal court may grant habeas relief only if the state court's adjudication of a claim on the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

1

the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and nevertheless arrives at a [different] result." *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000). A decision involves an "unreasonable application" of clearly established law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The "unreasonable application" standard is an objective one: "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). While the standard is demanding, it is not insurmountable. AEDPA deference is not a rubber stamp for state court errors that violate fundamental constitutional rights. When a state court's decision is based on fabricated factual findings that are contradicted by the trial record itself, or when a state court fails to apply controlling Supreme Court precedent to materially indistinguishable facts, AEDPA deference does not apply. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[D]eference does not by definition preclude relief.").

As demonstrated below, Petitioner's case satisfies both prongs of § 2254(d). The state habeas court repeatedly altered the text of expert reports, fabricated factual findings unsupported by any record evidence, and declined to apply controlling Georgia Supreme Court precedent to materially identical facts. These failures warrant federal habeas relief.

## I. PETITIONER'S CLAIMS ARE FULLY EXHAUSTED AND NOT PROCEDURALLY DEFAULTED

The Respondent's Answer-Response relies heavily on the assertion that several of Petitioner's claims are "new as pled" and therefore procedurally defaulted under Georgia's successive petition rule, O.C.G.A. § 9-14-51. (Resp. Answer, pp. 3–6, 55–63). This contention is factually false and relies on a blatant mischaracterization of the state court record.

2

Under 28 U.S.C. § 2254(b)(1)(A), a petitioner must exhaust available state remedies by "fairly presenting" the substance of his federal claims to the state courts. *Picard v. Connor*, 404 U.S. 270, 275–78 (1971). A claim is fairly presented if the petitioner provides the state courts with the "substantial equivalent" of the claim raised in federal court; exact identical phrasing is not required. *Id.* at 278; *see also Vasquez v. Hillery*, 474 U.S. 254, 257–60 (1986) (holding that variations in legal theory or factual allegations do not create a "new" claim if the underlying substance remains the same).

A direct review of Petitioner's State Habeas Petition and Brief in Support demonstrates that the exact substance, legal theories, and factual bases of the allegedly "new" claims were exhaustively litigated before the state habeas court.

**(a) The "Temporal Limitation" of the Search Warrant (Grounds 4(i) & 4(ii)) Was Fairly Presented.**

The Respondent erroneously claims that while Petitioner challenged the search warrant for a lack of particularity in state court, "none of them alleged that the search warrant lacked particularity based on the warrant's overbreadth for lack of a temporal limitation, as raised here." (Resp. Answer, p. 5, n.3; p. 56, n.21).

This is demonstrably incorrect. Petitioner dedicated an entire section of his State Habeas Brief to this exact issue. On page 37, (HT. P.250) Petitioner explicitly argued: "Therefore the warrant for any recorded files was overbroad and should have had limiting instructions to search files for the only date described by the detective in the affidavit..." On page 38, (HT P. 251) Petitioner cited *Maryland v. Garrison*, 480 U.S. 79 (1987), regarding the "failure to limit broad descriptive terms by relative dates." On page 39, (HT P.251) Petitioner cited *United States v. Winn*, 79 F. Supp. 3d 904 (S.D. Ill. 2015), explicitly quoting the federal court's holding regarding the failure to limit the "TIME FRAME." Petitioner also raised the specific issue of temporal limitations in Grounds 59, 60, 61, and 62 of his State Habeas Petition and Brief. The state courts were given a full and fair opportunity to rule on the temporal overbreadth of the warrant.

**(b) The United States v. Cronic Claim (Ground 5(i)) Was Fairly Presented.**

3

The Respondent admits that Petitioner raised trial counsel's failure to raise a defense or object at trial, but claims that framing this failure as a complete denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984), is a "new" legal theory. (Resp. Answer, p. 5, n.4).

This is false. Petitioner explicitly cited *Cronic* and its specific legal standard in his State Habeas Brief. (HT-P.303) On page 90, Petitioner argued that counsel was ineffective for not applying the adversarial process, explicitly stating: "...as in *U.S. v. Cronic*, 466 U.S. 648, 658 (1984) 'Failure to subject the prosecution's case to a meaningful adversarial testing, the adverse process becomes presumptively unreliable and prejudice is automatically implied.'" The fact that Petitioner, proceeding pro se, misspelled "Cronic" as "Chronic" does not negate that the exact Supreme Court precedent, citation, and legal standard were squarely presented to the state habeas court.

### (c) The Competency Hearing Claim (Ground 2(ii)) Was Fairly Presented.

The Respondent argues that claiming trial counsel was ineffective for "failing to demand a competency hearing" is new. (Resp. Answer, p. 55, n.20). This is an unreasonable splitting of hairs contradicted by the record. On pages 55–58 (HTP.268-271) of the State Habeas Brief (Section G), Petitioner explicitly argued: "It was due process violation to go to trial when competency and a mental disability were a issue... Due process violated by failing to hold a competency hearing..." On page 58, (HTP-271) Petitioner argued: "Trial counsel along with Petitioner's appellate counsels were ineffective... for failure to raise trial court error regarding competency and jury trial waiver issues." The federal claim is the substantial equivalent of the state claim.

### (d) The Due Process / Delusional Compulsion Claim (Ground 6(i)) Was Fairly Presented.

The Respondent argues that framing the failure to present a delusional compulsion defense as a standalone Due Process violation is a new claim. (Resp. Answer, p. 6, n.5; p. 56, n.22). The record proves otherwise. On page 54 (HT-P.267) of the State Habeas Brief, Petitioner stated: "Due process was also violated by trying Petitioner along with his waiver of his right to a jury trial while suffering from a mental disability..." On page 55, (HT-P-268) Petitioner cited *In the Interest of E.J.P.*, 236 Ga. App. 271 (1999), noting: "Due process violated when defendant not allowed to present a delusional compulsion defense." The state habeas court was fully apprised of the Due Process dimensions of this claim.

### (e) The Layered Ineffective Assistance of Counsel Claims Regarding Recusal (Ground 1(ii)) Are Not Defaulted.

The Respondent argues (Resp. Answer, pp. 59–61) that Ground 1(ii)—the claim that Trial Counsel Berry was ineffective at the first recusal hearing—is procedurally defaulted because it was not raised on direct appeal. However, the Respondent ignores that Petitioner cured this default in his state habeas proceedings by raising Ineffective Assistance of Appellate Counsel (against attorneys Durham, Horsley, and Merchant) for their failure to raise Trial Counsel Berry's ineffectiveness at the earliest opportunity.

A claim of ineffective assistance of appellate counsel for failing to raise a claim of ineffective assistance of trial counsel is a well-established method of overcoming procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000). Petitioner explicitly raised the ineffectiveness of all subsequent appellate counsel in Grounds 28, 29, 30, 31, and 83 of his State Habeas Petition, and briefed it extensively (see State Habeas Brief, p. 72). Because the layered ineffective assistance of appellate counsel claims were fully exhausted in the state habeas court, the underlying claim regarding Trial Counsel Berry's failures is properly before this Court.

### Conclusion to Section I

The Respondent's attempt to procedurally bar Petitioner's claims relies on a misrepresentation of the state court record. Because the substance, legal theories, and factual bases of these claims were fairly presented to the state courts, they are fully exhausted, not procedurally defaulted, and are ripe for federal habeas review on the merits.

## II. THE STATE COURT'S ADJUDICATION WAS OBJECTIVELY UNREASONABLE UNDER 28 U.S.C. § 2254(d)

The Respondent's Answer relies heavily on the deference afforded to state court decisions under AEDPA. As set forth in the Standard of Review above, that deference is not without limits. When a state court's adjudication rests on fabricated factual findings or the misapplication of controlling Supreme Court precedent, federal intervention is not merely appropriate—it is required. In Petitioner's case, the state habeas court repeatedly ignored the plain text of the trial record, fabricated factual findings to support its conclusions, and unreasonably applied Supreme Court precedent.

### (a) The Recusal, the Missing Exhibits, and Post v. State (Grounds 1, 31)

The Respondent argues that the state appellate court reasonably denied Petitioner's recusal claim because it "assumed" the missing campaign finance exhibits existed but still credited the live testimony of District Attorney Pat Head that he was treasurer "in name only." (Resp. pgs. 31–32). The state habeas court subsequently adopted this rationale. This adjudication fails under both prongs of § 2254(d).

**Unreasonable Determination of Fact (§ 2254(d)(2)).** It is objectively unreasonable for a reviewing court to credit the self-serving, live testimony of an interested party (the prosecuting District Attorney) over sworn, certified, public financial documents demonstrating hundreds of transactions. Appellate Counsel Merchant was ineffective for failing to argue that under Georgia law, the testimony of an interested party cannot dissipate the appearance of partiality. *See Baptiste v. State*, 229 Ga. App. 691 (1997). Merchant also failed to argue the cumulative effect of the recusal evidence—which included not just money, but Head lending his name and reputation to the campaign, and Head admitting to financial involvement in an interview with the Atlanta Journal-Constitution (HT pg. 1242). *See State v. Lane*, 308 Ga. 10 (2020) (cumulative error).

**Unreasonable Application of Clearly Established Federal Law (§ 2254(d)(1)).** Petitioner establishes absolute prejudice by pointing to the controlling case of *Post v. State*, 298 Ga. 241 (2015). In *Post*, the exact same trial judge (Judge Green) testified at his own recusal hearing regarding his relationship with the exact same District Attorney (Pat Head). The Georgia Supreme Court ruled that when a judge becomes a witness, he is divested of jurisdiction, and the court granted a new trial. *See also Isaacs v. State*, 257 Ga. 126 (1987). Had Petitioner's counsel properly raised the fact that Judge Green testified at his own recusal hearing (MTR 1) and perfected the record with the campaign exhibits, the result would have been an automatic reversal.

It is a telling irony that Petitioner's appellate counsel, Ashleigh Merchant, was also counsel on the *Post* case, yet she inexplicably failed to properly raise and perfect the record on this identical, jurisdiction-stripping error in Petitioner's case. The state court's conclusion that Petitioner suffered no prejudice—when a materially identical case involving the same judge and the same prosecutor resulted in automatic reversal—is objectively unreasonable under any standard of review.

### (b) Competency and the Jury Trial Waiver (Grounds 2, 72, 73)

The Respondent argues that the state habeas court reasonably found Petitioner competent to stand trial and waive his jury right based on the trial judge's perfunctory colloquy and trial counsel's lay opinion that Petitioner was "bright." (Resp. pgs. 36–39).

**Unreasonable Determination of Fact (§ 2254(d)(2)).** The court-ordered psychological evaluation explicitly stated, as an absolute, that Petitioner's condition "**interferes with his ability to assist counsel**" (HT pg. 459). Yet, the state habeas court and the Respondent (Resp. pg. 36) misquote this definitive medical conclusion, changing it to say his condition "might interfere" or "may interfere." Altering the text of a medical expert's report to avoid a constitutional issue is the definition of an unreasonable determination of fact. Furthermore, the state court cherry-picked trial counsel's testimony that Petitioner was "bright," while ignoring counsel's admission at the MNT that the psychologist warned him Petitioner's condition interfered with his understanding (HT pgs. 706–707).

**Unreasonable Application of Clearly Established Federal Law (§ 2254(d)(1)).** Under *Pate v. Robinson*, 383 U.S. 375 (1966), a trial court must hold a competency hearing when the evidence raises a "bona fide doubt" as to a defendant's competence. The fact that the trial judge ordered a psychological evaluation, combined with the expert's written conclusion that Petitioner's condition interfered with his ability to assist counsel, absolutely triggered this "bona fide doubt" standard. It is an unreasonable application of *Pate* and *Drope v. Missouri*, 420 U.S. 162 (1975), to elevate a brief "yes/no" colloquy and a defense attorney's non-medical lay opinion over a court-ordered clinical psychologist's written medical evaluation to bypass a required competency hearing.

### (c) The Warrantless Workplace Search (Grounds 3, 13–16)

***Threshold Issue: Stone v. Powell Does Not Bar This Claim.*** Before addressing the merits of the Fourth Amendment violation, Petitioner acknowledges the threshold question raised by *Stone v. Powell*, 428 U.S. 465 (1976), which generally forecloses federal habeas review of Fourth Amendment claims where the state has provided a "full and fair opportunity" to litigate the issue. However, *Stone* does not bar this claim for two independent reasons.

7

First, Petitioner did not receive a full and fair opportunity to litigate the Fourth Amendment issue because trial counsel's performance at the suppression hearing was constitutionally deficient. Counsel failed to establish the critical timeline showing that law enforcement breached the constitutionally protected employee area before any purported consent could have been given, and failed to impeach the state's consent theory with the transcript's conspicuous absence of any consent testimony. Where counsel's ineffectiveness prevents meaningful litigation of a suppression motion, the *Stone* bar does not apply. *See Kimmelman v. Morrison*, 477 U.S. 365, 382–83 (1986) (holding that *Stone* does not apply to Sixth Amendment ineffective assistance claims predicated on counsel's failure to properly litigate a Fourth Amendment issue).

Second, and alternatively, the primary basis for this claim is ineffective assistance of counsel under the Sixth Amendment—not a standalone Fourth Amendment claim. Because the Sixth Amendment claim is analytically distinct from the underlying search-and-seizure issue, *Stone* does not preclude review. *Kimmelman*, 477 U.S. at 382–83.

***The Merits: The State Court Fabricated the Fact of Consent.*** The Respondent relies entirely on the state habeas court's finding that Petitioner's coworker gave "consent" to law enforcement to search the employee locker room and bathroom. (Resp. pgs. 41–44). This is a blatant unreasonable determination of the facts under § 2254(d)(2).

The Motion to Suppress transcript (HT 818–849) is completely devoid of any testimony from employee Nimmons or the investigating officers that consent to search was ever requested or given. Furthermore, the record establishes a timeline that makes the state court's finding of consent factually impossible: Ms. Nimmons did not even return to the office until after the police were already there and had breached the threshold of the private employee locker room. Police entered the constitutionally protected area before any purported "consent" could have possibly been given by her. (MTS HT P.824-825)

The state habeas court fabricated the fact of "consent" to justify the warrantless search. Because the factual premise of consent is false, the state court's subsequent application of Fourth Amendment exceptions (such as common authority under *United States v. Matlock*, 415 U.S. 164 (1974)) is inherently unreasonable. Trial counsel's failure to establish the timeline and expose the

absence of consent testimony constituted deficient performance under *Strickland*, and the state court's refusal to acknowledge the empty record warrants federal intervention.

### (d) Constructive Denial of Counsel / Cronic (Grounds 5, 91–95)

Petitioner argues that his trial counsel's total abandonment at the stipulated bench trial—providing no defense, no opening statement, no closing argument, and stipulating to the legal sufficiency of the charges—constituted a complete denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984). The Respondent counters that this claim fails because the evidence against Petitioner was "overwhelming." (Resp. pgs. 61–62).

The Respondent's argument, adopted by the state habeas court, is an unreasonable application of clearly established federal law under § 2254(d)(1). The state court erroneously applied a *Strickland* prejudice analysis to a *Cronic* violation. Under *Cronic*, when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," the adversary process itself is presumptively unreliable, and prejudice is automatically implied. *Cronic*, 466 U.S. at 659. "Overwhelming evidence" does not excuse a structural denial of counsel.

**Critically, the record demonstrates that counsel's abdication was not a strategic choice but a complete abandonment of the adversarial role.** This is not a case where counsel, after investigation and deliberation, made an informed tactical decision to stipulate. Rather, the record reveals a counsel who conducted no meaningful investigation into available defenses, never discussed the delusional compulsion defense with his client despite the supporting psychological evaluation, and offered no adversarial challenge whatsoever to the State's case. A bench trial still requires an adversarial process. By stipulating to the legal sufficiency of the evidence—including the element of "force" on anesthetized patients for the aggravated sodomy charges—counsel abandoned his role as an advocate entirely.

The distinction between *Cronic* and *Strickland* turns on whether counsel's failures were isolated lapses or a wholesale failure to function as counsel. *See Bell v. Cone*, 535 U.S. 685, 697 (2002) (distinguishing between specific attorney errors and a complete failure to test the adversary's case). Where counsel presents no defense, challenges no evidence, concedes the State's entire case, and stipulates to every element of every charge, the adversarial process has

9

ceased to function. The state court's requirement that Petitioner prove specific prejudice in the face of a total adversarial breakdown is contrary to *Cronic*.

### (e) The Delusional Compulsion Defense (Grounds 6, 70, 71)

The Respondent argues that trial counsel was not ineffective for failing to present a delusional compulsion defense because the state appellate court found Petitioner "had not identified any specific delusion" and because Dr. Shaffer testified Petitioner knew right from wrong. (Resp. pgs. 51–54).

**Unreasonable Determination of Fact (§ 2254(d)(2)).** The psychological report in the record specifically and explicitly identified the delusion: Petitioner believed he was "sharing his life force" with his patients and that his actions had "non-sexual intent" (HT pgs. 1909–10, 1913). To state that no specific delusion was identified is to ignore the plain text of the expert's report.

**Unreasonable Application of Law (§ 2254(d)(1)).** The state court unreasonably conflated the general insanity standard (knowing "right from wrong") with the distinct standard for a "Delusional Compulsion" defense. Under Georgia law, a defendant may know right from wrong, but still be not guilty by reason of insanity if a delusion overmasters their will and justifies the act in their own mind. *Stevens v. State*, 256 Ga. 440 (1986). The expert report clearly supported the elements of a delusional compulsion defense.

Moreover, the record establishes that trial counsel never investigated or considered the delusional compulsion defense. This was not a strategic decision to forego an available defense —it was a failure to recognize that the defense existed at all. Counsel's failure to present this viable, expert-supported defense, and appellate counsel's subsequent failure to properly articulate the specific delusion to the appellate court, constituted ineffective assistance that the state courts unreasonably excused. *See Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003) (holding that counsel's failure to investigate a line of defense may constitute deficient performance where the failure results from inattention rather than strategic judgment).

### III. THE CUMULATIVE EFFECT OF COUNSEL'S FAILURES RENDERED THE TRIAL FUNDAMENTALLY UNFAIR

10

Even if this Court were to determine that no single claim independently warrants habeas relief—a conclusion Petitioner respectfully submits is foreclosed by the record—the cumulative effect of the errors detailed above rendered Petitioner's trial fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment.

The Eleventh Circuit has recognized that "while no single error may be sufficient in itself to warrant a new trial, the cumulative effect of multiple errors may deprive a party of a fair trial." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005). *See also State v. Lane*, 308 Ga. 10 (2020) (cumulative error analysis). The errors in Petitioner's case were not isolated—they cascaded at every critical stage:

At the pretrial stage, counsel failed to establish the timeline disproving consent at the suppression hearing and failed to demand a competency hearing despite a court-ordered psychological evaluation finding interference with Petitioner's ability to assist counsel. At the recusal hearing, counsel failed to present campaign finance documents demonstrating the DA's financial entanglement with the trial judge's campaign, and failed to object when the judge testified at his own recusal hearing. At trial, counsel abandoned the adversarial process entirely—presenting no defense, no opening or closing, stipulating to every element, and never even investigating the delusional compulsion defense supported by the expert evaluation already in the record. On appeal, successive appellate counsel failed to perfect the record with the missing campaign finance exhibits, failed to raise the jurisdiction-stripping *Post* issue, and failed to articulate the specific delusion identified in the expert report.

The aggregate effect is clear: Petitioner was tried before a judge with a disqualifying conflict, without a required competency hearing, on evidence obtained without lawful consent, with counsel who mounted no defense whatsoever and failed to raise a viable expert-supported affirmative defense. No reasonable jurist could conclude that this constellation of failures, taken together, did not deprive Petitioner of his constitutional right to a fair trial.

### IV. NO FEDERAL EVIDENTIARY HEARING IS REQUIRED BECAUSE THE STATE COURT RECORD ITSELF PROVES THE UNREASONABLENESS OF THE DECISION

The Respondent notes in its Answer (Resp. pg. 7) that Petitioner is not entitled to a federal evidentiary hearing under 28 U.S.C. § 2254(e)(2). Petitioner agrees that under *Cullen v.*

*Pinholster*, 563 U.S. 170 (2011), federal habeas review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.

Petitioner does not seek to introduce new evidence. Rather, Petitioner asserts that the state court record as it currently exists definitively proves that the state court's adjudications were objectively unreasonable. The state court ignored its own record—finding "consent" to search where the transcript shows none, finding "no specific delusion" when the psychological report explicitly details one, altering the text of a medical evaluation to dilute its conclusions, and ignoring the jurisdiction-stripping fact that the trial judge testified at his own recusal hearing. Because the unreasonableness of the state court's decisions is apparent on the face of the existing record, this Court may grant habeas relief without the need for an evidentiary hearing.

## V. A CERTIFICATE OF APPEALABILITY SHOULD ISSUE

In the event this Court denies relief, Petitioner respectfully requests that a Certificate of Appealability ("COA") issue pursuant to 28 U.S.C. § 2253(c). A COA shall issue if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

At a minimum, the following claims meet this standard: (1) the recusal claim, where the materially identical facts of *Post v. State* resulted in automatic reversal by the Georgia Supreme Court; (2) the competency claim, where the state court altered the language of a medical evaluation to avoid triggering *Pate*'s "bona fide doubt" standard; and (3) the *Cronic* claim, where counsel's total abandonment of the adversarial process at a stipulated bench trial raises substantial questions about the proper analytical framework. Reasonable jurists would debate each of these issues, and a COA should issue.

## CONCLUSION

The Respondent's attempt to procedurally bar Petitioner's claims fails against the plain text of Petitioner's state habeas filings. The state court's denial of relief was based on a record it refused

12

to read accurately and federal law it refused to apply correctly. The cascading failures of counsel at every stage of this case represent a manifest injustice that federal habeas corpus exists to correct.

WHEREFORE, Petitioner respectfully requests that this Honorable Court:

(1) Grant the petition for a writ of habeas corpus and vacate Petitioner's conviction and sentence;

(2) Order Petitioner's immediate release or, in the alternative, order the State of Georgia to provide him a new and constitutionally adequate trial;

(3) In the event relief is denied, issue a Certificate of Appealability on all claims that meet the standard of 28 U.S.C. § 2253(c); and

(4) Grant any such further relief as this Court deems just and proper.

Respectfully submitted this 4th day of MARCH, 2026.

Paul Patrick Serdula
GDC #1000702570
Dodge State Prison
P.O. Box 276
Chester, GA 31012

## Certificate of Service

I hereby certify that, on March 4th, 2026, I served a copy of the foregoing PETITIONER'S TRAVERSE upon Respondent's counsel by delivering a copy thereof, postage affixed, to prison mail room staff, properly addressed, upon:

**ELIZABETH H. BROCK**
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, GA 30334-1300

Dated: March 4th, 2026

_[signature]_
Paul Patrick Serdula
GDC #1000702570
Dodge State Prison
P.O. Box 276
Chester, GA 31012

Paul Serdula #1000702570
Dodge STATE PRISON
P.O. Box 276
CHester Ga. 31012



**CLEARED DATE**

MAR 09 2026

U.S. Marshals Service
Atlanta, GA 30303

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
2211 UNITED STATES COURT HOUSE
75 TED TURNER DRIVE S.W.
ATLANTA GA. 30303



**CLEARED DATE**

MAR 09 2026

U.S. Marshals Service
Atlanta, GA 30303



CERTIFIED MAIL

7022 0410 0002 6074 7305